# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **BLITZSAFE TEXAS, LLC,** § § § | |
| Plaintiff, § § | Case No. 2:17-cv-00423-JRG |
| v. § § | **JURY TRIAL DEMANDED** |
| **MAZDA MOTOR CORPORATION and MAZDA MOTOR OF AMERICA, INC. d/b/a MAZDA NORTH AMERICAN OPERATIONS, INC.,** § § § § § § § | |
| Defendants. § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Blitzsafe Texas, LLC ("Blitzsafe" or "Plaintiff"), files this First Amended Complaint against Defendants Mazda Motor Corporation and Mazda Motor of America, Inc. d/b/a. Mazda North American Operations, Inc. (collectively, "Defendants"), for patent infringement under 35 U.S.C. § 271 and alleges as follows:

### THE PARTIES

1. Plaintiff, Blitzsafe Texas LLC, is a limited liability company organized and existing under the laws of the State of Texas, and maintains its principal place of business at 100 W. Houston Street, Marshall, Texas 75670. Blitzsafe sells automotive interface products that allow the end user to connect a third-party external audio device or multimedia device to a car stereo in order to play the content on the device through the car stereo system and speakers. Blitzsafe sells its products throughout the United States including in this judicial district.

Blitzsafe is the owner of all right, title, and interest in and to U.S. Patent No. 7,489,786 and U.S. Patent No. 8,155,342.

2.  Upon information and belief, Defendant Mazda Motor Corporation ("Mazda Motor") is a Japanese multinational automaker with a place of business at 3-1 Shinchi, Fuchu-cho, Aki-gun, Hiroshima 730-8670, Japan.

3.  Upon information and belief, Defendant Mazda Motor of America, Inc. d/b/a Mazda North American Operations, Inc. ("MNAO"), is a California corporation with a place of business at 7755 Irvine Center Drive, Irvine, CA 92618, and may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. MNAO imports into the United States and wholesales in the United States Mazda vehicles, parts, and accessories.

4.  Upon information and belief, MNAO has a Training Center located at 1825 Lakeway Drive, Lewisville, Texas 75057, a place of business at 13135 Dairy Ashford Road, Sugar Land, Texas 77478 (the "Gulf Region Office"), and a Parts Distribution Center in Grapevine, Texas.

5.  Upon information and belief, MNAO engages in sales of products that infringe the patents-in-suit to six Mazda dealerships in the Eastern District of Texas, including Classic Mazda[1], El Dorado Mazda[2], Velocity Mazda[3], Classic Mazda Texarkana[4], Kinsel Mazda[5], and Gorman McCracken Mazda[6]. Upon information and belief, MNAO is registered to do business in Texas with the Secretary of State. The Texas Business Organizations Code (Bus. Org. §

---

[1] Located in Denton, TX. *See* http://www.classicmazdaofdenton.com/.
[2] Located in McKinney, TX. *See* http://www.eldoradomazda.net/.
[3] Located in Tyler, TX. *See* http://www.velocitymazda.com/.
[4] Located in Texarkana, TX. *See* http://www.classictexarkanamazda.com/.
[5] Located in Beaumont, TX. *See* http://www.kinselmazda.com/.
[6] Located in Longview, TX. *See* http://www.gormanmccrackenmazda.com/.

9.001) requires all entities formed outside of the State of Texas to complete such registration in order to "transact business" in Texas.  Upon information and belief, MNAO is registered as a taxable entity with the Texas Comptroller of Public Accounts in connection with its sales of Mazda-branded vehicles through its relationships with Mazda dealerships.

6. Upon information and belief, MNAO employees work with the Mazda dealerships in this District on issues related to sales, marketing, technical training, and the service of parts and accessories.  Upon information and belief, MNAO reimburses these employees for travel and personal expenses related to their job responsibilities.

7. Upon information and belief, the Mazda dealers located within the Eastern District of Texas have executed dealer agreements with MNAO.  Upon information and belief, these dealer agreements set forth standards and requirements enumerated by Defendants that dealers are required to comply with.  Upon information and belief, these standards and requirements are directed to at least the dealership facility, space, appearance, layout, and equipment.

8. Upon information and belief, MNAO regularly, continuously, and systematically provides support to and control over the Mazda dealerships located in the Eastern District of Texas.  Upon information and belief, MNAO employees regularly and systematically work at the Mazda dealerships in this District to educate dealership employees regarding features of the Mazda accused products sold in this judicial district, including but not limited to features regarding audio and multimedia integration systems.  Upon information and belief, various positions at MNAO and Mazda Motor require working at the dealerships in this District.

9. Upon information and belief, while Defendants' employees are working at dealerships in this District, they have access to communication devices (cell phones, laptops,

etc.) provided by Defendants on which they conduct business on behalf of Defendants. Upon information and belief, Defendants' employees have access to their MNAO and Mazda Motor e-mail accounts while they are present in dealerships in this District.

10. Upon information and belief, Defendants warrant to the original and each subsequent owner of new Mazda vehicles that any authorized Mazda dealer will make any repairs or replacements necessary to correct defects in material or workmanship arising during the warranty period. Upon information and belief, all such warranty work is paid for by the Defendants. Upon information and belief, there are six authorized Mazda dealers in the Eastern District of Texas, at the service departments at Classic Mazda[7], El Dorado Mazda[8], Velocity Mazda[9], Classic Mazda Texarkana[10], Kinsel Mazda[11], and Gorman McCracken Mazda[12]. Upon information and belief, service technicians employed at these six dealerships participate in Mazda Motor and MNAO-sponsored training programs, schools, and events.

11. Upon information and belief, Defendants provide Warranty Booklets ("Booklets") to Mazda customers, including those customers that purchase Mazda vehicles in the Eastern District of Texas. The Booklets direct questions regarding warranty rights and responsibilities to MNAO's Customer Experience Center. Upon information and belief, the Booklets direct customers, including those customers that purchase Mazda vehicles in the Eastern District of Texas, to provide direct, written notification of any alleged unrepaired defects or malfunctions and service difficulties to MNAO's Customer Experience Center, including notifications under applicable state laws.

---

[7] Located in Denton, TX. *See* http://www.classicmazdaofdenton.com/.
[8] Located in McKinney, TX. *See* http://www.eldoradomazda.net/.
[9] Located in Tyler, TX. *See* http://www.velocitymazda.com/.
[10] Located in Texarkana, TX. *See* http://www.classictexarkanamazda.com/.
[11] Located in Beaumont, TX. *See* http://www.kinselmazda.com/.
[12] Located in Longview, TX. *See* http://www.gormanmccrackenmazda.com/.

12. Upon information and belief, the Mazda dealerships located within this district are Defendants' exclusive agents, instrumentalities, and representatives within this judicial district for the provision within this District of all new warranty service for Mazda vehicles sold both within the district and outside the district. Upon information and belief, if a Mazda customer located within the district needs to have new car warranty repairs performed within the district, Defendants require the Mazda customer to have the work performed at one of their authorized Mazda dealers within the District.

13. Upon information and belief, through its exclusive agents, instrumentalities and representatives, Defendants provide new car warranty service within the district on the infringing products.

14. Upon information and belief, the technicians employed by MNAO including those that reside in the District, provide direct supervision and assistance within the District on a regular, ongoing, and continuous basis in connection with warranty repairs being performed within the district.

15. Upon information and belief, one or more Defendants regularly engage in marketing activities that promote the sale of Mazda-branded products to customers and/or potential customers located in Texas and in the judicial Eastern District of Texas. Upon information and belief, Defendants maintain interactive commercial websites, accessible to residents of Texas and the Eastern District of Texas, through which Defendants promote their products that infringe the patents-in-suit. Upon information and belief, these interactive commercial websites direct customers as to where to buy Mazda-branded vehicles with accused products, including the Mazda dealerships within the Eastern District of Texas. Defendants' interactive commercial websites also have submission forms that allow customers to request

offers and quotes from the dealers in this judicial district, estimate trade-in value with dealers in this judicial district, and view inventory at the dealers in this judicial district. Defendants' interactive websites also provide service and care information, and materials about Defendants' products, including the accused products, such as downloadable manuals and guides. Upon information and belief, Defendants attempt to sell their branded vehicles within the District, which include the infringing products, by causing advertisements for their vehicles to appear on television and radio programs broadcast into the District and in local newspapers distributed within the District.

16. Upon information and belief, Mazda Motor owns Mazda trademarks in the United States, including but not limited to Mazda, Mazda RX-Vision, Mazda CX-3, Mazda CX-9, Mazda CX-5, Mazda RX-7, Mazda 6, Mazda 5, and Mazda 3.

## JURISDICTION AND VENUE

17. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

18. This Court has personal jurisdiction over Defendants. Defendants conduct business and have committed acts of patent infringement and/or have induced acts of patent infringement by others in this judicial district and/or have contributed to patent infringement by others in this judicial district, the State of Texas, and elsewhere in the United States.

19. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) because, among other things, Defendants are subject to personal jurisdiction in this judicial district, Defendants have a regular and established place of business in Texas and in this judicial district, have purposely transacted business involving the accused products in this judicial district,

including sales to one or more customers in Texas, and certain of the acts complained of herein occurred in this judicial district.

**20.**     Defendants are subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to its substantial business in this State and judicial district, including (a) at least part of its past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

## PATENTS-IN-SUIT

**21.**     On February 10, 2009, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,489,786 (the "'786 Patent") entitled "Audio Device Integration System."

**22.**     On April 10, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,155,342 (the "'342 Patent") entitled "Multimedia Device Integration System."

## FACTUAL ALLEGATIONS

**23.**     The patents-in-suit generally cover systems for integrating third-party audio devices and multimedia devices with a car stereo.

**24.**     Plaintiff has complied with the requirements of 35 U.S.C. § 287(a).

**25.**     Defendants manufacture, import and/or sell audio and multimedia integration systems, which have been installed in Mazda-branded vehicles made in or imported into the United States since at least approximately 2011, including the "Mazda Connect" System, as well as accessories to be installed at or after the time of delivery of the vehicle (hereinafter collectively referred to as "Infotainment Systems"). These Infotainment Systems include head

7

units, extension modules, and iPod/iPhone and mp3 integration kits that Mazda purchases from third-party suppliers. The Mazda Infotainment Systems are sold in at least the following Mazda vehicles during the period 2011 to the present: Mazda 2, Mazda 3, Speed 3, Mazda 6, MX-5 Miata, RX-8, Mazda 5, CX-3, CX-5, CX-7 and CX-9.

26.     The Mazda Infotainment Systems support the integration of third-party external audio and multimedia devices, such as MP3 players, with the car stereo. The Infotainment Systems permit an end user to connect a third-party external audio or multimedia device to the car stereo by wire, such as through a USB port or auxiliary port, or wirelessly, such as through Bluetooth. Once connected, the end user may control the third party external audio device and multimedia device using the car stereo's controls, and the audio from the external audio device may be played through the car stereo and speakers while text, pictures, visual images and video may be displayed on the display screen of the car stereo.

27.     Mazda's user manuals, instructional videos, websites and other information demonstrate to the BMW users, customers and prospective customers how an external audio device and multimedia device may be connected to the car stereo by wire to, for example, a USB port or wirelessly by Bluetooth and how the external device may be controlled by the car stereo's controls. For example, the Owner's Manual for the 2013 Mazda 6, downloaded from https://www.mazdausa.com/owners/how-to-use-my-mazda, provides:

▼How to use USB mode (Type B)



▼How to use iPod mode (Type A)



*NOTE*
*The iPod functions on the iPod cannot be operated while it is connected to the unit because the unit controls the iPod functions.*

Bluetooth® audio outline

When a portable audio unit equipped with the Bluetooth® communication function is programmed to the Bluetooth® unit, you can listen to music recorded on the programmed portable audio device from the vehicle's speakers. It is not necessary to connect the portable audio device to the vehicle's external input terminal. After programming, operate the vehicle audio control panel to play/stop the audio.



## COUNT I
**(Infringement of the '786 Patent)**

28. Paragraphs 1 through 27 are incorporated by reference herein as if fully set forth in their entireties.

29. Blitzsafe has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '786 Patent.

30. Defendants have and continue to directly infringe one or more claims of the '786 Patent, including claim 57, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States infringing Infotainment Systems without authority and in violation of 35 U.S.C. § 271.

31. Defendants have and continue to indirectly infringe one or more claims of the '786 Patent by knowingly and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into

the United States the infringing Infotainment Systems. For example, Defendants, with knowledge that the Infotainment Systems infringe the '786 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '786 Patent by providing Infotainment System user manuals, product manuals, instructional videos and website information that instruct end users how to use the Infotainment Systems, including specifically how to connect their external third-party audio and multimedia devices to the car stereo and how to control the external device using the automobile's controls. Defendants induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '786 Patent, but while remaining willfully blind to the infringement.

32.   Defendants have and continue to indirectly infringe one or more claims of the '786 Patent by contributing to the direct infringement, either literally or under the doctrine of equivalents, by others, including end users, by offering to sell, selling and/or importing into the United States the infringing Infotainment Systems and with the knowledge, at least as of the date of this Complaint, that the Infotainment Systems contain components that constitute a material part of the inventions claimed in the '786 Patent. Such components include, for example, interfaces that permit an end user to use a car radio's controls to control an external third party audio device and multimedia device. Defendants know that these components are especially made or especially adapted for use in an infringement of the '786 Patent and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use. Alternatively, Defendants believed there was a high probability that others would infringe the '786 Patent, but remained willfully blind to the infringing nature of others' actions.

33. Blitzsafe has suffered damages as a result of Defendants' direct and indirect infringement of the '786 Patent in an amount to be proved at trial.

34. Blitzsafe has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '786 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

35. Defendants have committed and continue to commit acts of infringement that Defendants actually knew or should have known constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '786 Patent. Upon information and belief, Defendants had actual knowledge of the '786 Patent from prior litigations accusing products made by Infotainment System suppliers of Defendants, and prior litigations in which their Infotainment System suppliers were involved as third parties, Defendants' infringement of the '786 Patent has been and continues to be willful, entitling Blitzsafe to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

## COUNT II
### (Infringement of the '342 Patent)

36. Paragraphs 1 through 27 are incorporated by reference herein as if fully set forth in their entireties.

37. Blitzsafe has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '342 Patent.

38. Defendants have and continue to directly infringe one or more claims of the '342 Patent, including claim 49, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States infringing Infotainment Systems without authority and in violation of 35 U.S.C. § 271.

39.     Defendants have and continue to indirectly infringe one or more claims of the '342 Patent by knowingly and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the infringing Infotainment Systems.  For example, Defendants, with knowledge that the Infotainment Systems infringe the '342 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '342 Patent by providing Infotainment System operating manuals, product manuals, instructional videos and website information and documentation that instruct end users how to use the Infotainment Systems, including specifically how to connect external third-party audio and multimedia devices to the car stereo and how to control the external device using the automobile's controls.  Defendants induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '342 Patent, but while remaining willfully blind to the infringement.

40.     Defendants have and continue to indirectly infringe one or more claims of the '342 Patent by contributing to the direct infringement, either literally or under the doctrine of equivalents, by others, including end users, by offering to sell, selling and/or importing into the United States infringing Infotainment Systems, with the knowledge, at least as of the date of this Complaint, that the Infotainment Systems contain components that constitute a material part of the inventions claimed in the '342 Patent.  Such components include, for example, interfaces that permit an end user to use a car radio's controls to control an external third-party audio device. Defendants know that these components are especially made or especially adapted for use in an infringement of the '342 Patent and that these components are not a staple article or commodity

13

of commerce suitable for substantial non-infringing use. Alternatively, Defendants believed there was a high probability that others would infringe the '342 Patent, but remained willfully blind to the infringing nature of others' actions.

41. Blitzsafe has suffered damages as a result of Defendants' direct and indirect infringement of the '342 Patent in an amount to be proved at trial.

42. Blitzsafe has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '342 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

43. Defendants have committed and continue to commit acts of infringement that Defendants actually knew or should have known constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '342 Patent. Upon information and belief, Defendants had actual knowledge of the '342 Patent from prior litigations accusing products made by Infotainment System suppliers of Defendants, and prior litigations in which their Infotainment System suppliers were involved as third parties, Defendants' infringement of the '786 Patent has been and continues to be willful, entitling Blitzsafe to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Blitzsafe prays for relief against Defendants as follows:

a. Entry of judgment declaring that Defendants have directly and/or indirectly infringed one or more claims of each of the patents-in-suit;

b. An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their

officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of the patents-in-suit;

    c.    An order awarding damages sufficient to compensate Blitzsafe for Defendants' infringement of the patents-in-suit, but in no event less than a reasonable royalty, together with interest and costs;

    d.    Entry of judgment declaring that this case is exceptional and awarding Blitzsafe its costs and reasonable attorney fees under 35 U.S.C. § 285; and

    e.    Such other and further relief as the Court deems just and proper.

Dated: September 5, 2017

Respectfully submitted,

**BROWN RUDNICK LLP**

 */s/ Alfred R. Fabricant*
Alfred R. Fabricant
NY Bar No. 2219392
Email: afabricant@brownrudnick.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@brownrudnick.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@brownrudnick.com
Alessandra C. Messing
NY Bar No. 5040019
Email: amessing@brownrudnick.com
Shahar Harel
NY Bar No. 4573192
Email: sharel@brownrudnick.com
John A. Rubino
NY Bar No. 5020797
Email: jrubino@brownrudnick.com
Daniel J. Shea
NY Bar No. 5430558
Email: dshea@brownrudnick.com

**BROWN RUDNICK LLP**
7 Times Square
New York, NY 10036
Telephone: 212-209-4800
Facsimile: 212-209-4801

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com

**McKool Smith, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099


**ATTORNEYS FOR PLAINTIFF
BLITZSAFE TEXAS, LLC**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on September 5, 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ *Alfred R. Fabricant*
Alfred R. Fabricant